## Dean et al. *v.* Winton et al., Appellants.

*Wills—Intent of testator.*

The intent of a testator is to be gathered from his entire will, rather than from the terms of a particular devise, which, regarded alone, might be inconsistent with his testamentary scheme as a whole.

*Vested and contingent estate—Condition—Precatory words.*

A testator devised to his children by name all of his residuary estate, except that devised to his wife, which was a life estate in the mansion house and curtilage.   On the death of the wife the mansion house and curtilage were to be divided equally among his children surviving and the issue of such as might be dead.   He further provided that, as the mansion house and curtilage were not susceptible of division, it should be appraised, on the death of his wife, and "the same shall be taken by such of my devisee or devisees as shall take the farm now attached to the same, securing the respective portions to those interested by bond and mortgage payable in five equal annual payments with interest."

*Held* that the words of the clause quoted were not precatory, but testamentary; that the estate was contingent upon the partition, but would vest at that time; and, being once vested, the law would not imply that the appraisement and payment of the shares to the other children was a condition of the devisee's tenure.   The remedy of the other parties in interest would be in the orphans' court.

Argued Feb. 25, 1892.   Appeal, No. 174, Jan. T., 1892, by defendants from judgment of C. P. Lackawanna Co., Jan. T., 1889, No. 301, on verdict for plaintiffs, in ejectment, for one-fourth interest in land described in writ and mesne profits.   Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Suit was brought Dec. 24, 1888, by A. D. Dean et al., child-

ren of Polly S. Dean, a child of Henry Heermans, claiming as devisees of a one-quarter interest in the land, under the will of Henry Heermans, against Catherine Winton et al., grantees of Henry C. Heermans, who claimed as devisee of the land under said will.

The evidence, on the trial before ARCHBALD, P. J., was to the following effect: Henry Heermans died Oct 20, 1843, seized of the land in dispute, leaving a will, dated Dec. 17, 1842, which contained the follow provisions, *inter alia :*

" Secondly. I give and bequeath unto my dear wife Sarah Ann, one-third part of all my personal property after the payment of my debts, together with the interest of one-third part of all my real estate, to be ascertained by the appraisement hereinafter mentioned and to be charged upon the land.

" I also bequeath to my said wife two acres and a half of land on the west side of the public highway, embracing my mansion house during her natural life, and no longer; the said two acres and a half of land to be set off as follows: [describing it;] this last bequest is made, however, on the following conditions : That my said wife shall pay over to my executor hereinafter mentioned, five hundred dollars out of her share of my personal property, within one year after my death, which said sum is to be distributed equally among my devisees hereinafter mentioned, and in case my said wife shall neglect or refuse within the period aforesaid to accede to the foregoing condition, then this last bequest is to be null and void.

" Thirdly. I give and bequeath unto my beloved children Catherine, intermarried with W. W. Winton, Polly, Mahala, Olive, Caroline, Henry Clay, Harriet and Ruth Ann, all the residue of my estate, real, personal and mixed, to be divided equally among them, subject, nevertheless, to the payment of the legacy hereinafter mentioned ; and in the case of the death of either of the above mentioned eight children without issue, my will and desire is that the portion or portions that such child or children would be entitled to if alive, should be equally divided among those of my foregoing mentioned children who survive, and the issue of such as may die leaving issue.

" In others words, my will is, that such of my eight children above mentioned as shall survive, together with the issue of

such of them that may die, leaving issue, shall take the whole of my real and personal estate, except which is hereby devised to my said wife, and a legacy hereafter to be mentioned. . . .

"In case my wife shall take my mansion house and the two acres and a half of land under the foregoing provisions of this will, my desire and will is that at her decease the same shall be equally divided among my eight children specially mentioned in item third, or among the survivors of them at that time, and the issue of such as may be dead. As the said mansion house and two acres and a half of land is not susceptible of division, my will and desire is that immediately after the death of my wife that the said premises shall be appraised by three judicious and disinterested men, and that the same shall be taken by such of my devisee or devisees as shall take the farm now attached to the same, securing the respective portions to those interested by bond and mortgage, payable in five equal, annual payments with interest; but, in case my said wife should die before this will shall take effect, then my desire is that my said mansion house and land should be appraised with my other real estate under the provision hereinbefore mentioned. . . ."

The widow took the mansion under the terms of the will, and died Aug. 23, 1868, leaving to survive her three children, and the issue of a deceased child, Polly S. Dean, minors, plaintiffs in this case. On Nov. 24, 1868, W. W. Winton was appointed guardian for these minors.

Plaintiffs offered, *inter alia*, the above evidence and rested.

Defendants then offered in evidence proceedings in partition in the estate of Henry Heermans and a special Act of Assembly of March 16, 1847, making this record evidence. Also the election of the guardian of Henry C. Heermans to take, as his ward's share, a purpart, being the farm from which the mansion house and two and a half acres had been cut off.

On Oct. 19, 1868, appraisers, chosen by the surviving children and Isaac Dean, for the estate of his wife, met and appraised the mansion house and two and one half acres at $4,400. This appraisment was not recorded in the orphans' court, and it did not appear that it was reduced to writing.

On Oct. 20, 1868, Henry C. Heermans conveyed the land in question to W. W. Winton, the consideration named in the deed being $1,100.

Defendants then offered to prove by W. W. Winton "that he and Catherine, one of the defendants in this case, went into possession of the land in dispute immediately after the execution of the deed of Henry C. Heermans to W. W. Winton, now given in evidence, and that they have occupied it ever since. That the deed was made in pursuance of the appraisement with the assent of the parties at that time in interest, A. B. Dunning and wife, W. W. Winton and Catherine Winton, Henry C. Heermans, Isaac Dean, executor of the last will and testament of Polly S. Dean dec'd, and the father of these plaintiffs. That the money was paid by W. W. Winton to the respective parties, to wit: Mrs. Dunning and Henry C. Heermans, and Isaac Dean, executor of the last will and testament of Polly S. Dean, dec'd. This is for the purpose of showing an acquiescence in the appraisement, and payment of the money and transfer of the land in dispute, from that time until the commencement of this suit."

Objected to " for the reason that the conveyance from Henry C. Heermans to W. W. Winton is a conveyance simply of the one-fourth interest in this property, as shown by the consideration named in the deed. That the parties plaintiff were nearly all minors, under the age of twenty-one years, at the time this appraisement took place; and this witness, who was a party interested, was their legal guardian at that time, and took advantage of his situation. That the right claimed in this case by the plaintiffs is a strictly legal right, and that no legal appraisement was made; and that the other interest, that of Mrs. Dunning, was conveyed by a deed separately to the witness prior to the time when the appraisement was held. That the testimony is irrelevant and immaterial." Objection sustained and bill sealed. [1]

Defendants then offered to prove by the same witness that he paid to Isaac Dean the one fourth of the appraisement of the mansion house and lot.

Objected to " for the reason that the plaintiffs were minors. Isaac Dean had no power or authority to bargain away the interest of the children of Polly S. Dean; had no authority to receive the money paid to him in behalf of the children, and that in fact the witness himself was the guardian of the minor children, and not Isaac Dean, and that the testimony is immaterial and irrelevant." Objection sustained, and bill sealed. [2]

Defendants further offered in evidence deed of A. B. Stevens, sheriff, dated Nov. 5, 1881, for lands sold as the land of W. W. Winton to Catherine Winton, *inter alia*, for the land in dispute. Objected to as immaterial and irrelevant. Objection sustained, and bill sealed. [3]

Defendants asked for binding instructions, which were refused. [4]

The court charged:

" My best judgment in regard to it now—and it is certainly a most difficult case, gentlemen—is that the plaintiffs are entitled to your verdict; and I therefore give you binding instructions to find in favor of the plaintiffs.

[" The position of the defendants is, that, under the will of old Mr. Heermans, these two and a half acres, which he left to the widow during her lifetime, went to Henry Clay Heermans upon the election by his guardian to take the adjoining farm; and that thereupon the interests of the other children and devisees of Mr. Heermans were merely personal property. I do not so construe the will.] [5]

[" The interests of all the parties remain contingent until the death of the widow. Who were to take, was to be determined by who were living or the issue of those who were dead. So that, at the death of Mrs. Heermans, my judgment is that the title to this land passed as real estate under the will to the parties in interest—the parties who were then entitled to take —and not as personalty, subject to be changed, possibly, into personalty, upon a valid carrying out of the appraisement provided for in the will. And without a showing that there has been any such valid carrying out of the appraisement mentioned in the will, the plaintiffs are entitled to their one-fourth interest.] [6] . . . ."

Verdict for plaintiffs for one-fourth interest in land described in writ, and $469.20, mesne profits, and judgment thereon; whereupon defendants took this appeal.

*Errors assigned* were (1–6) rulings on evidence, answer to point, and charge in brackets, quoting them as above.

*Samuel B. Price* and *Garrick M. Harding*, with them *W. G. Ward* and *G. S. Horn*, for appellants.—Title passed by devise subject to lien for price: Hart v. Homiller, 20 Pa. 252; Hart

v. Homiller, 23 Pa. 39; Lancaster Bank's Ap., 127 Pa. 214.
Legatees of proceeds of land take no estate in the land: Evans's
Ap., 63 Pa. 186; Bright's Ap., 100 Pa. 606; Jones v. Cald-
well, 97 Pa. 45; Allison v. Wilson, 13 S. & R. 330; Willing v.
Peters, 7 Pa. 287; Miller v. Meetch, 8 Pa. 425; Parkinson's
Ap., 32 Pa. 458; Selfridge's Ap., 9 W. & S. 55; Silverthorn
v. McKinster, 12 Pa. 72.    Orphans' court is proper tribunal:
Hart v. Homiller, 20 Pa. 252; Hart v. Homiller, 23 Pa. 39.

*H. M. Hannah*, for appellees.— Precatory words will not
convert fee into lesser estate : Pennock's Est., 20 Pa. 268;
Burt v. Herron, 66 Pa. 400; Bowlby v. Thunder, 105 Pa. 179;
McIntyre v. McIntyre, 123 Pa. 329; Hoeveler v. Hune, 138
Pa. 442.    Appraisement should have been in orphans' court:
Boshart v. Evans, 5 Wh. 551; Myer's Ap., 62 Pa. 104.    Father
of minors had no power to act: Senser v. Bower, 1 P. & W.
450; Heft v. McGill, 3 Pa. 263; Turner v. Partridge, 3 P. &
W. 172; Swain v. Fidelity Co., 54 Pa. 458.    Silence will not
estop: Folk v. Beidelman, 6 Watts, 339; Hill v. Epley, 31
Pa. 331; Urban v. Grimes, 2 Gr. 96; Lenhart v. Ream, 74
Pa. 59.

OPINION BY MR. JUSTICE HEYDRICK, July 13, 1892.

It is not to be doubted that when Henry Heermans had de-
vised the mansion house and two and one half acres of land to
his wife for life, the remainder would have passed by the gen-
eral devise of the residue of his estate contained in the third
paragraph of the will if there had been no other provision indic-
ative of a different intention.    But the intent of a testator is
to be gathered from his entire will rather than from the terms
of a particular devise, which regarded alone might be inconsist-
ent with his testamentary scheme as a whole.    Thus in Rodgers
v. Rodgers, 7 Watts, 15, a subsequent general disposition of all
of a testator's property was held not to interfere with a pre-
vious specific appropriation of part of it, because from the
whole will it was apparent that when making the general dis-
position the testator had in contemplation only the property
then undisposed of.    In the present case it is evident from the
will considered as a whole that the testator had in his mind
separated the mansion house and two and a half acres of land
from the residue of his estate, and consequently that when in

the third paragraph he spoke of the residue, he had not in con-
templation the mansion house and its allotted grounds. It is
enough that in a subsequent clause he disposed of the remain-
der in that property in terms different from his residuary dis-
position. And it is with those terms that we have chiefly to
do in this case.

The testator directs that at the death of his wife the mansion
house and grounds shall be equally divided among the eight
children to whom the residue of the estate had been given or
among the survivors of them at that time and the issue of such
as then might be dead. If there had been nothing more the
persons here described would have taken the remainder as ten-
ants in common. But in the immediate context he declares:
" As the said mansion house and two acres and a half of land
is not susceptible of division my will and desire is that imme-
diately after the death of my wife the said premises shall be
appraised by three judicious and disinterested men, and that
the same shall be taken by such of my devisee or devisees as
shall take the farm now attached to the same, securing the re-
spective portions to those interested by bond and mortgage pay-
able in five equal annual payments with interest." Thus it is
made clear that by the equal division directed in the preceding
sentence the testator meant an equal division of the appraised
value of the property, and the only question to be determined
is whether in virtue of this clause, the remainder vested uncon-
ditionally in Henry Clay Heermans, upon the consummation
of the partition of the residue of the real estate, by his election
to take the farm mentioned.

The words of the clause quoted are not precatory as con-
tended by the learned counsel of the appellee. They are testa-
mentary; they sufficiently disclose the intention of the maker
of the instrument in which they are contained respecting the
posthumous destination of this part of his property; and that is
all that is required in a will: 1 Jarman on Wills, 18. The
clause is therefore a good devise of the remainder in question
to that one of the testator's children who in the partition of
the residue of his real estate should take the farm from which
the mansion house and grounds were temporarily severed for
the convenience of the widow. Until the partition should be
made and the farm taken by one of the children named the

devise was necessarily contingent. But as the rules of law require the vesting of estates as soon as there is any one who can take, the remainder vested in Henry Clay Heermans upon his election to take the farm in 1846 : Lantz v. Trusler, 37 Pa. 482. At this time there was certainly no condition that could be performed. The appraisement was not to be made until after the deat**h** of the widow which did not occur until 1868; and the payment of the appraised value was to be made still later. But neither appraisement nor payment to the other children of their shares was by the terms of the devise made a condition of the devisee's tenure ; and when an estate has once vested, the law will not imply a doubtful condition to defeat it : Womrath v. McCormick, 51 Pa. 504; Lantz v. Trusler, *supra*. It is, however, more than doubtful whether the making of the appraisement and payment of the shares of the appraised value, were intended to be conditions of the devisee's tenure. In Hart v. Homiller, 20 Pa. 248, a similar devise was held not to be on condition that the devisee should pay the valuation, but that the valuation was simply a charge upon the land which could be enforced only in the orphans' court. It follows that whatever remedy these plaintiffs have is in the orphans' court. If they were not concluded by anything done they might long since have had the appraisement made under the Act of April 17, 1869, P. L. 72, and enforced payment in the manner indicated in Hart v. Homiller, 23 Pa. 39.

The judgment is reversed.