## Lippincott's Estate.

*Will—Construction—Life estate — Remainder — Income — Descendants—Disinheriting heir—Avoidance of intestacy.*

1. If a will directs that, on the death of a legatee, leaving no descendants, the interest given to him shall be paid to another party named, there is, in the absence of a provision to the contrary, an implication that if the legatee leaves descendant  they shall have the interest. The English rule to the contrary is without force or effect in this State.

2.. In construing a will the court must place itself, as nearly as possible, in the position of testator at the time he made it.

3. The rule that an heir is not to be disinherited except as the result of express words or necessary implication is of the same force and effect, but no greater, than that a testator will be presumed to have intended to avoid an intestacy as to any part of his estate.

4. Where the result of applying the rule that an heir shall not be disinherited except as a result of express words or necessary implication, would be to give to him more than he would have obtained under the intestate laws, the effect of the rule is greatly weakened, and that against intestacy, if applicable, will ordinarily prevail.

Argued January 9, 1923. Appeals, Nos. 210 and 213, Jan. T., 1923, by Isabel A. Barklie et al., from decree of O. C. Phila. Co., April T., 1905, No. 272, dismissing exceptions to adjudication, in estate of J. Dundas Lippincott, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and SCHAFFER, JJ. Affirmed.

Exceptions to adjudication of GEST, J. See 2 D. & C. R. 1.

The opinion of the Supreme Court states the facts.

Exceptions dismissed in per curiam opinion.

Isabel A. Barklie, widow, and Girard Trust Co., ancillary administrator of Ralph M. Wurts-Dundas, deceased, appealed.

*Error assigned*, inter alia, was decree, quoting it.

*William N. Trinkle*, of *Bell, Kendrick, Trinkle & Deter*, for Isabel A. Barklie, widow.—This appellant (the widow) contends that her husband, the provisions of whose will she accepted, did not intend to provide and did not provide in his said will that, on the nephew's death before her, the entire half share that went to him in his lifetime should then go to his surviving descendant or descendants and thereby exclude her from all interest therein in this case which has happened: Grothe's Est., 229 Pa. 186; Pearson's Est., 10 Pa. Dist. R. 189; Bender

v. Bender, 226 Pa. 607; Corr's Est., 202 Pa. 391; Bradford v. Bradford, 6 Wh. 236.

On the death of the nephew leaving the widow surviving, the one-half share, which prior to his death was payable to him, goes to the widow, so that she then has the whole trust income until her death; if, on the other hand, she should predecease the nephew, then the nephew takes "this share" of the estate for life, it being obviously included in the principal expressly given him by the next succeeding words.

*Sharswood Brinton,* with him *John Hampton Barnes,* for Girard Trust Company, ancillary administrator.— A gift to one person without limitation to that person's life or without restriction, and to terminate on the death of another person, is an estate for that other person's life: Little's App., 81 Pa. 190; Dillin's Est., 18 Pa. Dist. R. 420, affirmed 47 Pa. Superior Ct. 158; Leech's Est., 18 Pa. Dist. R. 527, affirmed 228 Pa. 311; Ritter's Est., 190 Pa. 102; Harned's Est., 54 Pa. Superior Ct. 47.

*H. Gordon McCouch,* for appellee, cited: Tyson's Est., 191 Pa. 218; Shaffer's Est., 262 Pa. 15; Beilstein v. Beilstein, 194 Pa. 152; Harned's Est., 273 Pa. 237; Kreamer v. Showalter, 1 Pa. C. C. R. 453.

OPINION BY MR. JUSTICE SIMPSON, January 29, 1923:

By the holographic will of J. Dundas Lippincott his residuary estate is given to a trustee, with directions to invest it and divide the income "every six months between my wife Isabel Armstrong Lippincott, and my nephew Ralph Wurts-Dundas, share and share alike. Should either die before the other, without descendants alive at his or her decease, this share shall go to the one surviving.

"On the death of my wife, Isabel Armstrong Lippincott, I give and bequeath the residue and remainder of my estate to my nephew Ralph Wurts-Dundas, for life

with remainder to his descendants taking per stirpes upon the principal of representation," with a further remainder to certain hospitals "should he leave no descendants surviving him."

The will was executed on August 4, 1904, when testa-tor was sixty-four years of age, and his wife thirty-seven; they had been married for some time and had no children. Some years after his death she remarried, is now fifty-five years old, and is still childless.

The widow and nephew both survived testator, as did also a daughter of the latter, who was born before the will was executed, and is appellee here. The nephew died first, and, because of this fact, we have the present controversy, which relates solely to the distribution of the one-half of the income of the residuary estate, accru-ing after his death and during the lifetime of the widow, and which he would have received, if he had not died.

At the audit below there were three claimants for this fund. The widow alleged there was no express gift of it, in the event of the nephew dying during her lifetime, leaving descendants, and hence she was entitled to a por-tion of it, as upon an intestacy. The administrator of the estate of the nephew claimed that the nephew was given an estate during the lifetime of the widow, and as he died during that lifetime, leaving a descendant him surviving (who could not take because the will did not so provide), under the gift per autre vie this one-half share should be awarded to him, as the nephew's personal representa-tive. The daughter of the nephew claimed that under the will there was an implied gift to the nephew's descend-ants, should he die during the lifetime of the widow leaving descendants, and hence this fund should be awarded to her as the only one in this class. This latter was the conclusion reached by the court below; and, from the decree made in accordance with it, the other two claimants have severally taken these appeals.

Notwithstanding the able and exhaustive argument of counsel for the widow, and the equally ingenious one

of counsel for the administrator, we are not convinced that, under the will alone, any real doubt arises regarding the accuracy of the conclusion reached by the court below. We are satisfied that,—by acting as his own lawyer, probably with one or more other wills to guide him, but without any accurate understanding of the legal terms used in them,—testator has succeeded, as usual, in befriending the lawyers, though not their clients.

Counsel for the widow, without directly saying so, asks us to overrule Beilstein v. Beilstein, 194 Pa. 152, and the cases in its train, largely because the English courts still follow their earlier antagonistic conclusions. We decline to do this; on the contrary, we reaffirm the conclusion reached in that case, both on the ground of stare decisis and because it is sound in principle. No one doubts but that every layman would understand a will in precisely the way there decided, and since this is a layman's will, written by a layman, we ought so to construe it: Shaffer's Est., 262 Pa. 15, 19. In England the courts give great weight to technical rules, in determining the intent; with us, if possible, we ascertain it from the language alone, without reference to such rules, which are considered only so far as discovering the intent is concerned when it does not otherwise clearly appear,—they being applied, however, on the distribution, after the intent has been ascertained from the language of the will.

With Beilstein v. Beilstein, supra, as our guide, it is clear, if the first paragraph of the residuary clause is alone considered, appellee would be entitled to take, for there would be an implied gift to her, because her father, the nephew named in the will, died leaving her as his only descendant. It is alleged, however, that because of the second paragraph above quoted, the gift cannot be implied, since thereunder the widow's descendants, should she leave any, could take none of this income, whereas, under the clause out of which the alleged implication arises, her descendants would take her share of it, she being one of the "either" therein specified.

She therefore claims that no implication should be allowed, since permitting it would involve a contradiction not otherwise appearing, and hence an intestacy arose, by reason of which she became entitled to the disputed half share of the income.

There is no such contradiction however. An elliptical form of expression is quite common in writing and speaking alike, and perhaps in wills and contracts most of all. It is not necessary to repeat things that have just been expressed; they are understood to be in the mind of the speaker or writer, and the listener or reader likewise understands them, without repetition. In Goold Brown's "Grammar of English Grammars" it is said, at page 815: "Ellipsis is the omission of some word or words, which are necessary to complete the construction, but not necessary to convey the meaning. Such words are said, in technical phrase, to be *understood;* because they are received as belonging to the sentence, though they are not uttered. Of compound sentences, a vast number are more or less elliptical; and sometimes, for brevity's sake, even the most essential parts of a simple sentence are suppressed. There may be an omission of ......even a whole clause, when this respects what precedes." It was not necessary, therefore, for testator to repeat in the second paragraph what had been said in or was necessarily implied from the first; hence the alleged contradiction does not exist and the rule of Beilstein v. Beilstein, supra, controls.

A striking illustration of the fact that the conclusion thus reached is correct, and of the necessity for not giving a too literal construction to the language of holographic wills,—indeed, of any wills,—appears from another analysis of these residuary clauses. Under the last sentence of the first paragraph, (viz, "Should either die before the other, without descendants alive at his or her decease, this share [of the income] shall go to the one surviving"), if the widow had died first, leaving no descendants, the trust would have continued, the nephew

receiving the whole of the income. By the second paragraph, on the death of the widow under the circumstances stated, the trust would at once end and the nephew get a life estate. It is clear, therefore, that either the last clause of the first paragraph above quoted must be so remodeled as to make it applicable, so far at least as the continuance of the trust is concerned, only to the case of the nephew dying first leaving no descendants, thereby partially eliminating the "either," on which appellants so greatly rely, or the ellipsis must be supplied in the second paragraph. Indeed, with precisely the same argument and citation of authorities hereafter referred to, it might as well be contended that there was no gift of the principal, under the contingency which has arisen, since the life estate of the nephew was dependent on his surviving the widow, the remainder estate dependent on the facts appearing on his death as life tenant, and the widow is not to be disinherited except as the result of express words or necessary implication. No one contends for this, however, and it can hardly be doubted, when the matter is broadly viewed from the standpoint of testator, but that supplying the ellipsis furnishes the better construction.

In the light of what has been said, the will should, in our judgment, be construed as if it read as follows (the words in brackets being the added clauses) : I direct that the income from my residuary estate shall "be divided every six months between my wife, Isabel Armstrong Lippincott, and my nephew, Ralph Wurts-Dundas, share and share alike. Should either die before the other without descendants alive at his or her decease, this share shall go to the survivor [otherwise it shall go to such descendants]. On the death of my wife, Isabel Armstrong Lippincott [leaving no descendants] I give and bequeath the residue and remainder of my estate to my nephew, Ralph Wurts-Dundas for life, with remainder to his descendants......[if my wife is then dead or when she dies]." The first added clause is, of course the implied

gift; the second and third are the completing of the elliptical sentences.

Against all that has been said above, the widow's contention is that no implication can be drawn from the language actually used, because to do so would violate the rule that an heir (and, a fortiori, a widow, who has been called "a purchaser for value"), is not to be disinherited unless as the result of express words or necessary implication. This rule (which, as already stated, is of no effect, if the language of a will fairly leads to the conclusion that the heir is not to take), is of the same force and effect, and no greater, than the one which says the testator must be presumed to have intended to avoid an intestacy as to any part of his estate: Grothe's Est., 229 Pa. 186, 190. Yet here the widow endeavors to make the former of greater weight than the latter, and this, not for the purpose of obtaining the share to which she would have been entitled as "heir," but a greater share, to the injury of one who is an heir. The adjudication gives to her the full one-half of the income to which she is entitled under the intestate laws, and now she seeks, as against those having an equal statutory right, to obtain three-fourths of the income, and leave for the others only one-fourth of it. True, this result arises, as she alleges, because there is an intestacy, which, of course, simply assumes the point she asks us to decide, and moreover does not alter the fact that she is seeking to declare the intestacy, in order that the heir, quoad the income, may be pro tanto disinherited, without express words or necessary implication.

It is difficult to read this will without concluding the nephew and his descendants, being of testator's blood, were the principal objects of his bounty; that he believed his widow would have no children, a conclusion which time has justified; that he thought one-half of the income from his residuary estate would be ample for her support, and only gave her the other half in the event of the extinction of the nephew's line; that no reason appears

why testator should have given those descendants the principal of his estate in remainder and yet have deprived them of this one-half of the income, when, on the death of their father, who had theretofore received it, they would possibly need it all the more; and that (as affecting the administrator's claim) the will does not show even the slightest trace of an intention that the personal representatives of the nephew should receive anything, or that the nephew's descendants should take other than directly from testator. True, all of these considerations would fall before a contrary intent expressed in the will; as there is none, however, they are entitled to due weight in determining what was testator's purpose.

The decree of the court below is affirmed and the appeals are dismissed at the cost of the respective appellants.