## Lippincott's Estate

Before Van Dusen, P. J., and Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*Frank H. Truscott* and *William N. Trinkle*, for exceptant.

*Arthur E. Pettit* and *Boyd Lee Spahr*, contra.

VAN DUSEN, P. J., June 3, 1938.—Testator's will provided as follows:

"As to the remainder of my estate, either Real, Personal or Mixed I give and bequeath the same to The Pennsylvania Company for Insurances on Lives and Granting Annuities where I am a Director to be held by them in trust, the Real Estate to be sold with power to sell real estate and make good deeds, the proceeds of sale of the same to be invested in good safe securities, not neces-

sarily 'legal investments,' the interest of which to be divided every six months between my wife Isabel Armstrong Lippincott and my nephew Ralph Wurts-Dundas, share and share alike. Should either die before the other without descendants alive at his or her decease, this share shall go to the one surviving.

"On the death of my wife Isabel Armstrong Lippincott I give and bequeath the residue and remainder of my Estate to my Nephew Ralph Wurts-Dundas for life with remainder to his descendants taking per stirpe upon the principal of representation. Should he leave no descendants surviving him this sum shall be evenly divided between the following Hospitals in the City of Philadelphia: The University Hospital, West Philadelphia; The Jefferson Hospital of this City and the Episcopal Hospital of this City."

The nephew survived the testator and died before the widow, leaving a daughter. This court, affirmed by the Supreme Court, awarded the nephew's share of the income to his daughter (Lippincott's Estate, 2 D. & C. 1, 276 Pa. 283), implying a gift to his descendants because of the gift of income to the survivor of the two life tenants in case either died without descendants.

Now the widow has died without descendants. The will plainly provides for such a case by giving the whole principal at once to the descendants of the nephew.

Exceptants, who claim under the widow, argue that the will contains an implied gift to the descendants of the widow, that the gift of the principal vested only at the death of such descendants, and that as they might be persons born after the death of the testator, the period of vesting is too remote; therefore, there is an intestacy as to the whole, half going to the widow and half to the nephew under the intestate law.

The error in this argument is in supposing that principal vests only at the death of the descendants of the widow. At the death of the nephew principal vests in his descendants, that is to say, his descendants then living.

Possession might be postponed to admit the life estate of the widow, and it might have been postponed to admit the life estates of her descendants, that is to say, her descendants living at her death. Their life estates would be good, though the end of their life estates would be a period too remote for the vesting of the succeeding estate.

Every intendment would be against the proposition that remainders are vested in the descendants of the nephew who might be living at the death of the descendants of the wife. The will contains a gift over to charities, "should he leave no descendants surviving him"—not descendants surviving the wife.

Exceptants have an alternative contention which may be stated as follows: Either life estates are to be implied in favor of the descendants both of the widow and the nephew, or no life estates are to be implied at all. If the courts should now, reversing the position taken at the prior litigation, conclude that no life estates are to be implied, then the decision of many years ago was wrong, and this error should now be made good to those who claim under the widow. It would seem to be in the minds of counsel that the courts, in order to avoid applying the rule against remoteness, might overrule the principle of the prior decision by holding that there was no life estate implied in favor of the descendants of the widow, from which it would follow that there was no implied gift in favor of the descendants of the nephew. In such case exceptants think that consistency requires a restoration of the fruits of the prior litigation.

This court, however, has no desire or intention to disregard the principle of the Supreme Court's prior decision, and, as above indicated, has followed it. If any court, having power to do so, should now conclude that that principle was wrong, such court might proceed on the new principle, though inconsistent with the prior decision, without having the power to undo what would then appear to be the wrong of many years ago. The principle of res judicata does not require consistency in the reasoning of

the courts, but only that a judgment shall not later be rendered inconsistent in its result with the prior judgment. The nephew's daughter was awarded the income and nothing can undo that award, whether it was right or wrong.

Happily, no such situation arises.

The exceptions are dismissed, and the readjudication is confirmed absolutely.